**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-490-02** |
| **ROSEMARIE J. DIXON**<br>**a/k/a "Rosemarie Bond"** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Rosemarie Dixon laundered millions of dollars of funds stolen from American businesses, as well as money the United States government had set aside to help small businesses that were struggling for survival during the COVID-19 pandemic. She opened bank accounts for a phony business, conducted dozens of bogus transactions designed to deceive others into believing the funds were derived from legitimate business transactions, and helped to hand the plundered money back to those running the illegal operation. Dixon knew the funds were dirty. She knew she had no legitimate claim to them. She made numerous corrupt decisions over an approximate one-year period and made herself an essential component of a massive theft and laundering scheme that targeted American victims. In exchange, she kept a portion of the stolen money for herself.

The defendant's participation was essential to the conspiracy. The scheme could not have succeeded to the extent that it did without her willingness, and the willingness of others like her, to move the money around in order to conceal its unlawful source, its location, and the identity of the person who was directing its movement. For her participation in the money laundering conspiracy, the defendant personally profited in an amount totaling at least tens of thousands of dollars, which she spent mostly on personal purchases, as well as mortgage payments, insurance, and living expenses. She also converted over $100,000 to cash, which she either kept for herself

or gave to her co-conspirators. For these reasons, as well as for the reasons provided below and in the sealed supplement to this memorandum, the government recommends a sentence within the Sentencing Guidelines range of 57 to 71 months of incarceration.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025). At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory Guidelines range and of the Section 3553(a) factors.

## I. **BACKGROUND**

On November 13, 2025, a federal grand jury returned a 21-count indictment charging Christina Williams, the defendant's daughter, and Rosemarie Dixon with one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h), and twenty counts of money laundering in

violation of 18 U.S.C. § 1956(a)(1)(B)(i), arising from their involvement in a large-scale conspiracy to launder the proceeds of a wire fraud scheme. Dixon was charged in Count One, the conspiracy count, as well as Counts Nine through Twenty-One, which were substantive counts of money laundering.

On April 23, 2026, pursuant to the terms of a written guilty plea agreement, the defendant pled guilty to Count One of the indictment, which charged her with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). During her guilty plea colloquy, the defendant admitted that from approximately January 2020 through April 2021, she conspired with an individual referred to as Person 1, as well as her daughter Christina Williams and other individuals, to participate in a money laundering conspiracy to conduct and attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and which, in fact, involved the proceeds of wire fraud, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

While she was participating in this conspiracy in 2020, she had a job as a certified nursing assistant until October 2020, when she "quit without notice." Presentence Report ("PSR") ¶ 86. Despite being gainfully employed, the defendant seized on the opportunity to work with Person 1 and others for her own benefit. She kept for herself a portion of the funds that she laundered through her accounts at the request of Person 1.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The total maximum sentence for Count One (money laundering conspiracy in violation of 18 U.S.C. § 1956(h)): 20 years of imprisonment, three years of supervised release, a fine of up to twice the value of the funds involved, and a $100 special assessment. Full restitution shall be ordered. Forfeiture may also be ordered.[1]

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory Guidelines range in the revised final Presentence Report ("PSR") issued on August 26, 2026. This calculation is as follows:

| | |
|---|---|
| Base offense level (§ 2S1.1, § 2B1.1(b)(1)(J)): | 26 |
| Convicted under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)): | +2 |
| Sophisticated laundering (§ 2S1.1(b)(3)): | +2 |
| Zero-point offender (§ 4C1.1): | -2 |
| Acceptance of responsibility (§ 3E1.1): | -3 |
| **Total offense level:** | **25** |

The defendant has not objected to the calculation set forth above. The defendant has a criminal history score of zero. Accordingly, the Guidelines range is 57 to 71 months of incarceration.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence

[1] In a separate motion, the government is seeking a forfeiture money judgment in the amount of $257,013.26, which is the amount of the dirty money that the defendant kept for herself, spent herself, and converted to untraceable cash.

within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id*. at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. <u>Consideration of the 3553(a) Factors Regarding Imprisonment</u>**

Defendant Dixon engaged in a serious offense in which she acted in concert with her daughter and others in a large, sophisticated conspiracy. Crimes committed through conspiracy are more significant than crimes committed by a single individual because, through the coordinated conduct of many participants, the conspiracy is capable of being more profitable, more difficult to detect, and harder to terminate. The conspiracy that the defendant participated in was a textbook example of such a conspiracy. Certain actors committed the cybercrime of submitting fraudulent

loan applications and stealing funds from businesses through business email compromise fraud. These actors were separate from those like the defendant who participated in moving stolen funds around once received, so the cyber actors were able to concentrate continuously on stealing. While that was occurring, Person 1 recruited willing participants like the defendant to open numerous business bank accounts to receive the stolen victim funds. As soon as the victim funds arrived in the conspirators' accounts, Person 1 and others coordinated with launderers like the defendant to conduct immediate transfers of that money in ways designed to avoid detection, tracing, and freezing. Specifically, the participants broke up the stolen funds into smaller transaction amounts, caused conspirators to send funds in multiple directions and in multiple layers (for example, to other conspirators and to their own accounts at other banks, and then back again in different amounts), and converted the stolen funds into cash and other difficult-to-trace financial instruments, such as cashier's checks. Because Person 1 had recruited multiple participants like the defendant, and each participant, like the defendant, had opened accounts at multiple banks, the web of transactions was complex. If a launderer had one account frozen by a bank due to suspected fraud, that person had many other accounts that could spring into action so that the person could continue to aid the conspirators. No one launderer held all of the stolen funds at once, so if the banks closed all of the accounts held by one launderer, the laundering conspiracy could continue to operate through others.

Throughout the course of the scheme, the defendant committed a variety of affirmative acts to assist the conspiracy, including opening bank accounts and conducting numerous financial transactions, including teller withdrawals, ATM withdrawals, wire transfers, purchasing cashier's checks, and writing checks drawn on the accounts of her bogus business.

The fact that the defendant does not have a prior criminal history does not weigh in favor of a below-Guidelines sentence. This fact is accounted for in the Guidelines range, because she is in the lowest criminal history category and received the two-level reduction in her offense level for being a zero-point offender.

The crime the defendant committed was one of greed and opportunity. For that reason, there is a moderate risk of recidivism and a need for the sentence in this case to send a message of deterrence to this defendant.

A sentence within the Guidelines range would also promote respect for the law and provide just punishment for the offense. The money laundering conspiracy in which the defendant participated caused real harm to American business victims and the United States government and siphoned money away from the small businesses which were legitimately qualified for pandemic loans. It succeeded on a large scale because it was organized, roles were compartmentalized, and people like the defendant were willing to risk conducting laundering transactions in their own names in order to make quick and easy money. These types of schemes are an epidemic in the United States and cannot succeed without people like the defendant laundering the funds. According to the 2026 INTERPOL Global Financial Fraud Threat Assessment, financial fraud is among the top five global crime threats, has caused a steady increase in fraud loss in the United States from $4 billion in 2020 to $16.6 billion in 2024, and is expected to escalate significantly in the next three to five years.[2] Financial frauds can destroy businesses and steal significant resources from governmental entities. *See*, *e.g.*, *United States v. Carver*, 916 F.3d 398, 404 (4th Cir. 2019) ("Financial fraud is a modern scourge. It preys especially upon the unsophisticated and vulnerable"

---

[2] The report is available at: https://www.interpol.int/News-and-Events/News/2026/INTERPOL-report-warns-of-increasingly-sophisticated-global-financial-fraud-threat.

and "harm[s] victims in almost irreparable ways by causing them loss of work, mental anguish, monetary loss, and loss of peace of mind."). In addition to sending a message of deterrence to defendant Dixon, there is also a need for this sentence to send a message of general deterrence to those who might be tempted to do the same. It is important to send a message that people who steal and launder money will face serious consequences. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotations omitted). The recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense and protects the public from further crimes of the defendant, for at least as long as she remains incarcerated.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 3553(a)(2)(D).

Adherence to the recommended Guidelines range assures that the defendant's sentence is consistent with those imposed nationwide for similarly situated offenders and thus complies with Section 3553(a)(6) and avoids undue disparity with cases nationwide. The Guidelines represent the distillation of more than 20 years of careful study of sentencing practices across the country and correlate as well to the varying severity of crimes as defined by Congress. Indeed, "the Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). Here, the properly calculated Guidelines range accurately accounts for the financial harm and sophistication of the scheme while also taking into account the defendant's

acceptance and lack of criminal history. A sentence within the Guidelines range will avoid unwarranted disparities with similarly situated defendants nationwide who have committed similar crimes.

While this Court has sentenced other conspirators in this scheme to below-Guidelines sentences, against the requests of the government, the circumstances of those defendants were significantly distinguishable from the circumstances here. Defendants Dixon and her daughter helped to launder significantly more money than any defendant who has faced this Court for sentencing in this investigation. Dixon's Guidelines offense level is therefore higher than any other defendant. Unlike defendant Carine (Crim. Case No. 25-39), defendant Dixon has no history of military service to the United States. Defendant McCrea (Crim. Case No. 25-387) had a lengthy pattern of volunteer work with vulnerable populations, which is not present here. Defendant Dunston (Crim. Case No. 25-248) had a history of several years of mental health and drug treatment that are not present in this case. In short, the mitigating factors the Court articulated in pronouncing the sentences of the co-conspirators are not factors in this case.

People who perpetrate financial crimes, especially highly organized and sophisticated financial crimes such as those at issue here, do pay attention to enforcement actions and trends. According to the 2026 INTERPOL Global Financial Fraud Threat Assessment, criminal networks are cooperating globally, sharing expertise, and adapting their illicit business models to optimize efficiency, "including through collaboration with specialized money laundering networks," and the offenders are "highly organized, skilled and agile." INTERPOL Report at 6.

Even those who are not in the top, organizational positions in a conspiracy like this one pay attention to the consequences of getting caught. They learn from their friends and family in their neighborhoods and social networks when someone who has committed a multi-million-dollar

crime and got caught, was sentenced only to probation. Stories like that cause people not to hesitate to recruit their friends and family, such as the defendants in this case, to participate in economic crime with them. In the face of the epidemic of financial crimes nationwide and internationally, the government asks the Court to consider its deterrence message in fashioning the appropriate sentence in this case.

At the same time, defendant Dixon has not presented a persuasive case for leniency and has not expressed any remorse for her crimes.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-Guidelines sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. <u>Supervised Release</u>**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The Guidelines commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years is warranted. As noted above, it is the government's position that the defendant presents a risk of recidivism, as the opportunity and temptation to commit a similar crime may present itself in the future. Supervision after incarceration will advance the goals of deterring criminal conduct, § 3553(a)(2)(B), protecting the public, § 3553(a)(2)(C), assuring that the defendant continues to pursue efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to her victims, § 3553(a)(7).

For these reasons, the government recommends a term of supervised release of three years and imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. CONCLUSION

Unless otherwise presented at the defendant's sentencing hearing and stated in the sealed attachment to this memorandum, the government believes that a sentence within the advisory Guidelines range of 57 to 71 months of incarceration and a three-year term of supervised release is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*s/ Nancy E. Potts*
NANCY E. POTTS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically and was served by electronic mail upon:

Jordan Zeitz, Esq.
18 W. Front St.
Media, PA 19063
JGZ215@aol.com
Counsel for Rosemarie Dixon

Date: September 2, 2026

*s/ Nancy E. Potts*
NANCY E. POTTS